**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IONNAE ALVARADO-JONES | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 25-1505 |
| | : | |
| VICTORIA'S SECRET STORES, LLC | : | |
| d/b/a VICTORIA'S SECRET & PINK | : | |
| BY VICTORIA'S SECRET | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **June 18, 2025**

A Philadelphian believes her employment supervisors sexually harassed her and retaliated against her eventually causing her to resign. Her attorney filed a timely administrative claim with the federal agency and dual filed an administrative claim with Pennsylvania agency but did so too late. Her attorney did not file a claim with the Philadelphia Commission on Human Relations, which provides her the same remedy as the Pennsylvania law. She now sues under the federal Title VII law as well as the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance. She argues her administrative filing (albeit untimely) with the Pennsylvania Commission allows her to also seek a remedy under the Philadelphia Ordinance even though she never filed a claim with the Philadelphia Commission under its administrative process. Her former employer moves to dismiss the Pennsylvania claim as untimely and the Philadelphia claim as unexhausted before the Philadelphia Commission and, therefore, improperly filed. We heard thoughtful oral argument. We agree with the former employer's (and several but not all our colleagues') interpretation of the Philadelphia administrative process as requiring the former employee administratively exhaust in the Philadelphia Commission regardless of her other claims

if she wishes to pursue a Philadelphia claim. We dismiss her Pennsylvania claim as admittedly untimely and her Philadelphia claim with prejudice.

## I.  Alleged facts

Retailer Victoria's Secret hired Ms. Alvarado-Jones in November 2021 as a Sales Associate in a Philadelphia store.[1] Manager Janet Santiago, Ms. Alvarado-Jones's supervisor, began texting Ms. Alvarado-Jones months into her employment "to connect with her more 'personally.'"[2] Manager Santiago then began sexually harassing Ms. Alvarado-Jones: she told Ms. Alvarado-Jones she was "so sexy," commented on her body, said Ms. Alvarado-Jones distracted her and customers, and even physically touched Ms. Alvarado-Jones's breasts and pulled her into corners.[3] This harassment occurred during their shifts together three days a week.[4] Store Manager Mercedes Gonzales observed Manager Santiago's sexual harassment of Ms. Alvarado-Jones but did not take steps to address it.[5]

Ms. Alvarado-Jones reported Manager Santiago's conduct to Victoria's Secret's Ethics Hotline after initially being fearful to do so.[6] Victoria's Secret told Ms. Alvarado Jones it would investigate her complaint, but she heard nothing further.[7] Manager Santiago continued to sexually harass Ms. Alvarado-Jones.[8]

Store Manager Gonzales and Manager Lakia began nitpicking Ms. Alvarado-Jones's work and screaming and cursing at her in retaliation for her complaint to the Ethics Hotline.[9] Ms. Alvarado-Jones then informed Manager Anton she intended to resign.[10] Store Manager Gonzales informed Ms. Alvarado-Jones she did not need to submit a resignation letter as Victoria's Secret would do it for her.[11] Ms. Alvarado-Jones believed this to mean Store Manager Gonzales did not accept her resignation.[12]

Ms. Alvarado-Jones then complained about the harassment and retaliation to Human Resources Representative McGready.[13] Representative McGready told Ms. Alvarado-Jones she would look into the complaint, but Ms. Alvarado-Jones never heard back from Representative McGready or anyone else in Human Resources.[14] Ms. Alvarado-Jones continued working for Victoria's Secret and Managers Gonzales and Lakia continued to scrutinize her work and scream at her.[15] Ms. Alvarado-Jones was then hospitalized for a medical condition.[16] Ms. Alvarado-Jones resigned from her employment with Victoria's Secret on December 19, 2022 feeling she had no other choice.[17]

Ms. Alvarado-Jones filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 25, 2023, and requested it be dual filed with the Pennsylvania Human Relations Commission.[18] She filed an amended charge on September 20, 2023, and the Equal Employment Opportunity Commission issued her a Notice of Right to Sue on December 20, 2024.[19] She did not file a Charge of Discrimination with the Philadelphia Commission on Human Relations.

## II. Analysis

Ms. Alvarado-Jones then sued her former employer Victoria's Secret alleging sex discrimination leading to a hostile work environment and retaliation.[20] She sues under federal law as well as under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance as she worked in Philadelphia. Congress, the Pennsylvania General Assembly, and Philadelphia City Council each require a complainant to exhaust the administrative remedies provided by them before seeking a remedy in court under their defined law. Victoria's Secret moves to dismiss Ms. Alvarado-Jones's claims arguing (1) her claims under the Pennsylvania Human Relations Act are time-barred because she failed to timely file a Charge of Discrimination

with the Pennsylvania Human Relations Act and (2) she failed to exhaust her administrative remedies under the Philadelphia Fair Practices Ordinance because she did not file a complaint with the Philadelphia Commission.[21] Victoria's Secret does not challenge Ms. Alvarado-Jones's Title VII claim in its Motion to dismiss and the parties are proceeding in discovery.[22]

Ms. Alvarado-Jones concedes her claims under the Pennsylvania Human Relations Act are untimely and should be dismissed.[23] But Ms. Alvarado-Jones opposes dismissal of her claims under the Philadelphia Fair Practices Ordinance arguing she exhausted her administrative remedies by filing her Charge of Discrimination with the Equal Employment Opportunity Commission and Pennsylvania Commission.[24]

We readily find Ms. Alvarado-Jones's claims under the Pennsylvania Human Relations Act are time-barred as she also agrees. But the real question presented is whether an individual who files a charge with the Equal Employment Opportunity Commission and/or the Pennsylvania Human Relations Commission satisfies the exhaustion requirement under the Philadelphia Fair Practices Ordinance.

We again conclude individuals who seek redress under the Philadelphia Fair Practices Ordinance must exhaust their claim by filing an administrative charge with the Philadelphia Commission. We further conclude individuals who choose to take advantage of the Philadelphia Commission's administrative procedures are barred from employing the Pennsylvania Commission's parallel process under the Pennsylvania Human Relations Act. We find Ms. Alvarado-Jones did not properly exhaust her administrative remedies under the Philadelphia Fair Practices Ordinance and she is precluded from doing so now. We dismiss her state and municipal claims with prejudice. Ms. Alvarado-Jones may proceed on her Title VII claims.

### A.  Ms. Alvarado-Jones's Pennsylvania Human Relations Act Claims are time-barred.

Ms. Alvarado-Jones sued her former employer under, among other statutes, the Pennsylvania Human Relations Act. The Pennsylvania General Assembly requires an aggrieved individual to file a complaint of discrimination under the Pennsylvania Human Relations Act within 180 days of the alleged violative act.[25] "[F]iling a charge of discrimination with the [Equal Employment Opportunity Commission] within the 180 mandatory filing period, together with a request that the [Equal Employment Opportunity Commission] dual-file it with the [Pennsylvania Commission], is sufficient to preserve claims under the [Pennsylvania Human Relations Act]."[26] An individual "must show a request to dual file with the [Pennsylvania Commission] within the 180 day mandatory filing period."[27]

The last discriminatory act occurred on December 19, 2022 when Ms. Alvarado-Jones alleges Victoria's Secret constructively discharged her from her employment.[28] She requested the Equal Employment Opportunity Commission dual file her charge with the Pennsylvania Commission on August 25, 2023, 249 days after the alleged last violative act.[29] This falls well outside the 180-day statute of limitation proscribed by the Pennsylvania Human Relations Act. Ms. Alvarado-Jones concedes she did not timely request the Equal Employment Opportunity Commission dual file her charge with the Pennsylvania Commission.[30] We dismiss this claim with prejudice.

### B.  Ms. Alvarado-Jones did not properly exhaust her administrative remedies under the Philadelphia Fair Practices Ordinance and she is now precluded from doing so.

Ms. Alvarado-Jones dual-filed administrative complaints with the Equal Employment Opportunity Commission and the Pennsylvania Commission.[31] She did not file a complaint with the Philadelphia Commission. Victoria's Secret argues Ms. Alvarado-Jones failed to

administratively exhaust her Philadelphia Fair Practices Ordinance claims.[32] Victoria's Secret further argues Ms. Alvarado-Jones cannot rectify this procedural misstep now by filing a complaint under the Philadelphia Fair Practices Ordinance with the Philadelphia Commission because she already filed a complaint with the Pennsylvania Commission.[33]

We begin with the undisputed premise sex discrimination and retaliation claims under the Philadelphia Fair Practices Ordinance are analyzed under the same framework as Title VII and Pennsylvania Human Relations Act claims.[34] In fact, "[t]he [Pennsylvania Human Relations Act] and the [Philadelphia Fair Practices Ordinance] are to be interpreted as identical to Title VII claims."[35] These overlapping enforcement schemes provide aggrieved individuals with multiple fora to address employment discrimination.[36]

The Supreme Court instructs "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."[37] We are mindful our colleagues observed the Philadelphia Fair Practices Ordinance "does not explicitly indicate that a plaintiff must exhaust her administrative remedies to bring suit."[38] "Nevertheless, every court to address the question of whether exhaustion is required has concluded that [Philadelphia Fair Practices Ordinance] claims must be administratively exhausted before a party may pursue such claims in court."[39]

This conclusion is in line with longstanding precedent interpreting analogous provisions in Title VII and nearly identical provisions in the Pennsylvania Human Relations Act. "[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well."[40] The Supreme Court has held, in interpreting Title VII's parallel provision, "[a]s a precondition to the commencement of a Title VII action in court, a complainant

must first file a charge with the Equal Employment Opportunity Commission[.]"[41] The Pennsylvania Supreme Court has held, in interpreting the Pennsylvania Human Relations Act's parallel provision, employees covered by the Act must utilize the administrative procedures of the Pennsylvania Human Relations Commission before commencing an action in court.[42] We agree Philadelphia Fair Practices Ordinance claims must be administratively exhausted before a party may pursue such claims in court.

The more complicated issue before us is whether Philadelphia Fair Practices Ordinance claims can be exhausted by filing administrative complaints with the Equal Employment Opportunity Commission and/or the Pennsylvania Commission instead of filing with the Philadelphia Commission. "There are two competing lines of cases" on this issue.[43] More cases to date conclude the exhaustion requirement under the Philadelphia Fair Practices Ordinance can be met by filing with the Equal Employment Opportunity Commission and/or the Pennsylvania Commission.[44] In recent years we and some of our colleagues have challenged this line of cases, concluding Philadelphia Fair Practices Ordinance claims can only be exhausted by filing a complaint with the Philadelphia Commission.[45] We consider the issue again and in more depth in light of recent, thoughtful consideration of the issue by our colleagues.

In interpreting local ordinances, like the Philadelphia Fair Practices Ordinance, we apply the rules of statutory interpretation.[46] Our "primary goal . . . is to ascertain the intent of the enacting entity—presently, the . . . City Council."[47] "Where a statute is unambiguous, its plain text will not be disregarded in furtherance of its spirit."[48] We find the Philadelphia Fair Practices Ordinance unambiguous and proceed with a plain text analysis.

The Philadelphia City Council through the Fair Practices Ordinance provides for a "Private Right of Action" in section 9-1122, which reads:

(1) If a complainant invokes the procedures set forth in this Chapter, that person's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant may bring an action in the Court of Common Pleas of Philadelphia County based on the right to freedom from discrimination granted by this Chapter.

(2) An action under this Section shall be filed within two years after the date of notice from the Commission closing the case. . . .

(3) The court may grant any relief it deems appropriate, including the right to recover for each violation:

> (a) Compensatory damages;

> (b) Punitive damages;

> (c) Reasonable attorneys' fees;

> (d) Court costs; and

> (e) Such other relief, including injunctive relief, as the court may deem appropriate.[49]

As evident, Philadelphia City Council expressly requires the following steps for procedural exhaustion before suing: (1) the individual files a complaint with the Philadelphia Commission; (2) if "the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party" within a year of the filing of the complaint, "the Commission must so notify the complainant"; (3) within two years of receipt of the notice, the individual may file claims under the Philadelphia Fair Practices Ordinance in court.[50] "If a complainant has not processed her claim in the manner set forth by [section] 9-1122 . . . then she is not a person entitled to the private right of action."[51] In other words, the Philadelphia City Council expressly conditions bringing such a claim in court on the individual's exhaustion before the Philadelphia Commission. References to time limits triggered by receipt of a "notice from the Commission" demonstrates City Council's intent the aggrieved employee must first exhaust her administrative remedies before the Philadelphia Commission. The Philadelphia Fair Practices Ordinance "has no provision to

permit dual-filing with another agency" and it "contains no exception to its exhaustion requirement for situations when someone filed with the [Pennsylvania Commission]."[52]

Judge Beetlestone carefully articulated the arguments underlying the dominant line of cases two years ago in *Higgins v. MetLife Inc.* She analyzed section 9-1122 and concluded it "does not expressly require a complainant to invoke the procedures under the [Philadelphia Fair Practices Ordinance] . . . or receive notice from the Commission before pursuing such claims in court."[53] She found, "[i]nstead, the text of Section 9-1122(1) is properly understood as preserving a complainant's right of action in court even if they invoke the procedures under the [Philadelphia Fair Practices Ordinance] by filing a complaint with the Philadelphia Commission—*i.e.*, the section provides that a complainant may still seek judicial recourse after invoking the procedures of the [Philadelphia Fair Practices Ordinance]."[54]

We still disagree after further considering the chosen statutory language with the benefit of additional persuasive reasoning from our colleagues since our *Peterkin* analysis four years ago. The *Higgins*'s reading effectively nullifies the exhaustion procedures laid out in section 9-1122. We cannot reconcile this interpretation with our colleagues' unanimous agreement Philadelphia Fair Practices Ordinance claims must be administratively exhausted before filing suit. The City Council chose to not include an exception to its exhaustion requirement when someone files with the Equal Employment Opportunity Commission and/or the Pennsylvania Commission. We instead interpret the City Council in section 9-1122 as plainly detailing a list of procedural steps concluding with a final receipt of notice which enables the individual to sue in court.[55] "Rather than merely giving complainant some options, section 9-1122 is specifying what a complainant must do to be entitled to a private right of action."[56] Our consistent reading is supported by long-standing interpretations of nearly identical provisions in the Pennsylvania Human Relations Act

and Title VII.[57] Permitting individuals to bypass the Philadelphia Commission undermines Philadelphia's capacity to resolve local employment discrimination actions in a forum tailored to Philadelphians by the Philadelphia City Council. We conclude individuals who seek to bring claims under the Philadelphia Fair Practices Ordinance must exhaust those claims before the Philadelphia Commission.

Having determined claims under the Philadelphia Fair Practices Ordinance must be exhausted before the Philadelphia Commission, we must consider additional language in the Ordinance: the City Council in section 9-1112 states the Philadelphia Commission "shall not accept a complaint from any person who has filed a complaint with the Pennsylvania Human Relations Commission with respect to the same grievance."[58] And, separately, City Council provides in section 9-1122 "[n]othing in this Chapter limits the right of an injured person to recover damages under any other applicable law or legal theory."[59] We appreciate our interpretation could "force a complainant to choose between pursuing relief under the [Philadelphia Fair Practices Ordinance] or the [Pennsylvania Human Relations Act]" and fair minded lawyers could view this choice as inconsistent with the language "[n]othing in this Chapter limits the right of an injured person to recover damages under any other applicable law or legal theory."[60]

But City Council in section 1122 did not preserve the ability of individuals to pursue claims under the Philadelphia Fair Practices Ordinance. It instead provides the passage of the Philadelphia Fair Practices Ordinance does not prohibit recovery "under ***any other applicable law or legal theory***."[61] We interpret this plain language as meaning, despite Philadelphia's decision to provide an alternative legal process to redress employment discrimination before a local administrative body, an aggrieved Philadelphian may seek redress under a different state or federal employment discrimination law. But, they must separately file under the Philadelphia Ordinance if they want

to recover under the Philadelphia Ordinance. The alternative interpretation would effectively import a right to bring a claim under the Philadelphia Fair Practices Ordinance into every statute in the state or federal system: an outcome the Philadelphia City Council could not have intended.[62]

We again conclude aggrieved individuals who seek redress under the Philadelphia Fair Practices Ordinance and the administrative procedures the Ordinance provides must exhaust their Philadelphia Fair Practices Ordinance claim before the Philadelphia Commission and, if they do so, they are consequently barred from employing the Pennsylvania Commission's administrative process under the Pennsylvania Human Relations Act.[63]

Turning to today's issue, there is no dispute Ms. Alvarado-Jones did not satisfy the Philadelphia Fair Practices Ordinance's procedures and did not file a complaint with the Philadelphia Commission. Because she previously filed a complaint with the Pennsylvania Commission she is now barred from taking advantage of Philadelphia's alternative grievance procedure.[64] Her Title VII claim proceeds but her Pennsylvania Human Relations Act claim is barred as untimely and her Philadelphia Fair Practices Ordinance claim is barred because she chose to seek redress under Pennsylvania's grievance procedure. Her lesson, as with all Philadelphians, is to either timely pursue the Pennsylvania claim or abandon the Pennsylvania claim and pursue the identical remedy through the Philadelphia Commission.

## III.   Conclusion

Ms. Alvarado-Jones candidly concedes her claims under the Pennsylvania Human Relations Act are time-barred. Ms. Alvarado-Jones did not properly exhaust her administrative remedies under the Philadelphia Fair Practices Ordinance and she is precluded from doing so now. We dismiss these state and municipal claims with prejudice. Ms. Alvarado-Jones proceeds on her federal claims under Title VII.

---

[1] ECF 1 at 4 ¶ 5.

[2] *Id.* ¶ 7.

[3] *Id.* at 4–5 ¶¶ 8–12.

[4] *Id.* at 5 ¶ 13.

[5] *Id.* ¶ 14.

[6] *Id.* ¶¶ 15–16.

[7] *Id.* ¶¶ 17–18.

[8] *Id.* ¶ 19.

[9] *Id.* ¶¶ 20–21.

[10] *Id.* ¶ 22.

[11] *Id.* ¶ 23.

[12] *Id.* at 6 ¶ 24.

[13] *Id.* ¶ 25.

[14] *Id.* ¶¶ 26–27.

[15] *Id.* ¶¶ 28–29.

[16] *Id.* ¶ 30.

[17] *Id.* ¶¶ 31–33.

[18] *Id.* at 3 ¶¶ 13–14.

[19] *Id.* ¶¶ 15–16.

[20] *See generally id.*

[21] ECF 10, at 2.

A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104

n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs*., 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016).

---

[22] ECF 18.

[23] ECF 12.

[24] *Id.*

[25] 43 PA. STAT. § 959(h).

[26] *Jankowski v. Fanelli Bros. Trucking Co., et al*, No. 13-2593, 2014 WL 690861, at *9 (M.D. Pa. Feb. 24, 2014) (quoting *Seybert v. Int'l Grp. Inc.*, No. 07-3333, 2009 WL 722291, at *17 (E.D. Pa. Mar. 17, 2009)).

[27] *Id.* (quoting *Hatten v. Bay Valley Foods, LLC*, No. 11-1122, 2012 WL 1328287, at *3 (W.D. Pa. Apr. 17, 2012)).

[28] ECF 1, at 6 ¶¶ 31–33.

[29] *Id.* at 3 ¶¶ 13–14.

[30] ECF 12 at 1.

[31] ECF 1, at 3 ¶¶ 13–14.

---

[32] ECF 10.

[33] *Id.*

[34] *Childers v. Trs. of the Univ. of Pa.*, No. 14-2439, 2016 WL 1086669, at *6 n.4 (E.D. Pa. Mar. 21, 2016); *see also* Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C. § 2000e *et seq.*; 43 PA. STAT. § 951 *et seq.*; PHILA. CODE § 9-1100 *et seq.*

The Philadelphia City Council through the Philadelphia Fair Practices Ordinance makes it unlawful for an employer "to refuse to hire, discharge, or discriminate against any person because of . . . sex . . . with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment." PHILA. CODE § 9-1103(1)(a). And the Philadelphia City Council prohibits retaliation by making it unlawful for an employer to "penalize or discriminate in any manner against any individual because he has opposed any practice forbidden by this Chapter or because he has made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder." *Id.* § 9-1103(1)(g).

[35] *Fennell v. Comcast Cable Commun. Mgt., LLC*, 628 F. Supp. 3d 554, 571 n.6 (E.D. Pa. 2022) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000)).

[36] *Cf. Driscoll v. Carpenters Dist. Council of W. Pa.*, 579 A.2d 863, 867–68 (Pa. 1990) (citing *Alexander v. Gardner-Denver*, 415 U.S. 36, 47 (1974)) ("As the Supreme Court has noted, Congress intended that there be multiple forums in which to seek remedies for discrimination.").

[37] *Pakdel v. City and Cnty. of S.F., Cal.*, 594 U.S. 474, 479 (2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006)).

[38] *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 667–68 (E.D. Pa. 2016) (citing PHILA. CODE § 9-1100–27).

[39] *Higgins v. MetLife Inc.*, 687 F. Supp. 3d 644, 650–51 (E.D. Pa. 2023) (collecting cases).

[40] *Krauss v. IRIS USA, Inc.*, No. 17-778, 2018 WL 2063839, at *3 (E.D. Pa. May 3, 2018) (quoting *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008)).

[41] *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 543 (2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)).

[42] *Clay v. Adv. Computer Applications, Inc.*, 559 A.2d 917, 920 (Pa. 1989). "This rule of 'exhaustion of remedies' has long been applied by the courts of th[e] Commonwealth to claims under the Act." *Vincent v. Fuller Co.*, 616 A.2d 969, 974 (Pa. 1992) (citation omitted).

[43] *Higgins*, 687 F. Supp. 3d at 651.

[44] *Id.* (collecting cases); *Brennan v. Five Below, Inc.*, No. 22-1383, 2025 WL 817597, at *8 (E.D. Pa. Mar. 13, 2025); *Ferenchick v. Bus. Wire, Inc.*, No. 23-4800, 2024 WL 5147025, at *5 (E.D. Pa. Dec. 16, 2024); *Doe v. City of Phila.*, No. 24-468, 2024 WL 2218897, at *3 (E.D. Pa. May 15,

2024); *Truesdale v. Albert Einstein Healthcare Network*, No. 22-1597, 2024 WL 329931, at *7 (E.D. Pa. Jan. 29, 2024); *Newsome v. City of Phila.*, No. 19-5590, 2021 WL 2810289, at *4 (E.D. Pa. July 6, 2021); *Rizzotto v. Quad Learning, Inc., et al.*, No. 18-4630, 2019 WL 2766588, at *3 (E.D. Pa. June 28, 2019); *Vazquez v. Carr and Duff, Inc., et al.*, No. 16-1727, 2017 WL 4310253, at *8 (E.D. Pa. Sept. 28, 2017); *Vandergrift v. City of Phila.*, 228 F. Supp. 3d 464, 482–83 (E.D. Pa. 2017); *Ahern*, 183 F. Supp. 3d at 668; *Richards v. Foulke Associates, Inc., et al.*, 151 F. Supp. 2d 610, 614–16 (E.D. Pa. 2001); *Hall v. Res. for Human Dev., Inc.*, 2000 WL 288245, at *2 (E.D. Pa. Mar. 7, 2000).

[45] *Smith v. RB Distrib., Inc.*, 498 F. Supp. 3d 645, 665 (E.D. Pa. 2020); *Peterkin v. Prospect Airport Servs., Inc.*, No. 21-490, 2021 WL 2400753, at *21 (E.D. Pa. June 11, 2021); *Lee v. Bay, LLC*, No. 21-5088, 2023 WL 1971209, at *3–*4 (E.D. Pa. Feb. 13, 2023); *Mouzone v. U. of Pa. Health Sys.*, No. 23-19, 2023 WL 7167565, at *2–*6 (E.D. Pa. Oct. 31, 2023); *Fountain v. Andrews Logistics LP*, No. 24-4759, ECF 15 at 2–3 (E.D. Pa. Feb. 3, 2025).

Eight years ago we considered exhaustion under the Philadelphia Fair Practices Ordinance in *Vandegrift*, 228 F. Supp. 3d 464. There we endorsed the dominant view, finding an individual can satisfy the Philadelphia Fair Practices Ordinance's exhaustion requirement "by filing a complaint with another administrative body." *Id.* at 482. Four years ago we considered exhaustion under the Philadelphia Fair Practices Ordinance anew in *Peterkin*, 2021 WL 2400753. There, we endorsed the minority view after considering the plain language of the Philadelphia Fair Practices Ordinance. *Id.* at *21. We found Ms. Peterkin had not properly exhausted her Philadelphia Fair Practices Ordinance claims before the Philadelphia Commission and her earlier Pennsylvania Human Relations Commission complaint barred exhaustion of her Philadelphia claims. *Id.*

[46] *City of Phila. v. City of Phila. Tax Rev. Bd. ex rel. Keystone Health Plan E., Inc.*, 132 A.3d 946, 952 (Pa. 2015) (citing *Bailey v. Zoning Bd. of Adjustment*, 801 A.2d 492, 502 n.19 (Pa. 2002)).

[47] *Id.* (citing 1 PA. CONS. STAT. § 1921(a)).

[48] *Id.* (citing 1 PA. CONS. STAT. § 1921(b)).

[49] PHILA. CODE § 9-1122.

[50] *Id.*

[51] *Mouzone*, 2023 WL 7167565, at *3. "This process is basically the same as those of the [Equal Employment Opportunity Commission] and [the Pennsylvania Human Relations Commission]" but "[i]f the [Philadelphia] Commission finds probable cause, it may decide to hold a hearing to resolve the charges of the complaint." *Id.* at *3 n.5 (citing PHILA. CODE § 9-1117–19). "Unlike Title VII and [the Pennsylvania Human Relations Act], which shunt adjudication to the courts, the [Ordinance] provides for an agency adjudication, final determination, and full slate of remedies." *Id.* (citing PHILA. CODE § 9-1117–18, 1105). "If the [Philadelphia] Commission goes that route, then the complainant has the right to appeal to any court of competent jurisdiction." *Id.* (citing PHILA. CODE § 9-1119).

[52] *Lee*, 2023 WL 1971209, at *3–4.

---

[53] *Higgins*, 687 F. Supp. 3d at 653.

[54] *Id.*

[55] *Mouzone*, 2023 WL 7167565, at *4 (citing P HILA. C ODE § 9-1122(1)).

[56] *Id.*

[57] *Id.* at *4–*5 (citing 42 U.S.C. § 2000e–5(e)(1), (f)(1) and 43 P A. S TAT. § 962(c)).

[58] P HILA. C ODE § 9-1112(4).

[59] *Id.* § 9-1122(5).

[60] *Higgins*, 687 F. Supp. 3d at 654; P HILA. C ODE § 9-1122(5).

[61] P HILA. C ODE § 9-1122 (emphasis added).

[62] Ms. Alvarado-Jones filed a complaint before the Pennsylvania Commission on August 25, 2023. ECF 1 at 3 ¶¶ 13–14. She did not file a complaint before the Philadelphia Commission. The question of whether Ms. Alvarado-Jones could have first filed a complaint with the Philadelphia Commission before filing a complaint with the Pennsylvania Commission under Philadelphia Code section 9-1112(4) is not before us. We decline to address it in dicta.

[63] Our analysis adds to thoughtful consideration of this issue in reaching similar conclusions by Judges McHugh, Wolson, Murphy, and Gallagher. *Smith*, 498 F. Supp. 3d 645 (McHugh, J.); *Lee*, 2023 WL 1971209 (Wolson, J.); *Mouzone*, 2023 WL 7167565 (Murphy, J.); *Fountain*, No. 24-4759, ECF 15 (Gallagher, J.).

[64] Filing a complaint with the Philadelphia Commission would now be untimely in any event.